UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT BECKLEY

MICHAEL WEBB and
CARRIE WEBB,

      Plaintiffs,

v.                                  CIVIL ACTION NO. 5:18-cv-01304

CENTRAL FLORIDA INVESTMENTS,
INC., d/b/a WESTGATE RESORTS, INC.,

      Defendant.

## MEMORANDUM OPINION AND ORDER

Pending is Defendant Central Florida Investments' ("CFI") Motion to Enforce Binding Jurisdictional Stipulations Limiting Damages Entered Into by Each Plaintiff and Plaintiffs' Counsel [Doc. 33], filed August 7, 2020. The matter is ready for adjudication.

## I.

On June 27, 2017, Plaintiffs Michael Webb and Carrie Webb ("the Webbs") instituted an action in the Circuit Court of Raleigh County alleging violations of the West Virginia Consumer Credit and Protection Act and West Virginia Computer Crime and Abuse Act, among other claims. [Doc. 33-1]. The Webbs contemporaneously filed a unilateral, signed, and notarized stipulation stating that "the Plaintiff shall neither seek nor accept an amount greater than $75,000.00 in this case, including any award of attorney's fees, but excluding interest and costs. [*Id.* at 10]. The stipulation stated that it would be binding "so long as this case remains in West Virginia Circuit Court or an Article III Court." [*Id.*]. The Complaint contained language identical to the stipulation. [*Id.* at 8–9].

During discovery, the Webbs learned that CFI had records of more than 150 collection calls placed to the Webbs using an autodialer. [Doc. 33-2 at 3]. On July 12, 2018, the Webbs filed a Motion to Amend Complaint seeking to add a claim for violations of the Telephone Consumer Protection Act. [*Id.* at 3–7]. The Circuit Court granted the Webbs' Motion to Amend on June 27, 2018, [Doc. 33-6 at 1]; and the Webbs filed the Amended Complaint on September 7, 2018, [Doc. 33-5 at 12].

Before the Circuit Court granted the Motion to Amend, CFI's Counsel requested a draft of the Amended Complaint, which the Webbs' Counsel provided. [Doc. 33-4 at 1]. In the e-mail transmitting the draft, the Webbs' Counsel informed CFI's Counsel that the Amended Complaint would withdraw the stipulation on damages. [*Id.*]. CFI then filed, on August 30, 2018, a Motion to Enforce Stipulation Limiting Damages. [Doc 33-7 at 2, 8]. The Webbs responded on September 6, 2018. [Docs. 1 at 2, 1-1 at 48].

On September 10, 2018, the Circuit Court held a hearing to determine the enforceability of the stipulation in view of the Amended Complaint. [Doc. 33-9]. The Circuit Court thereafter denied CFI's Motion to Enforce the Stipulation. [*Id.* at 6]. The Circuit Court noted that "[p]rior to filing suit, the parties entered into a stipulation dated June 23, 2017, that essentially stated plaintiffs would not seek nor accept an amount greater than Seventy Five Thousand Dollars ($75,000) so long as the case remains in state court." [*Id.* at 2]. It then relied upon precedent according discretion to set aside agreements of counsel when doing so does not visit prejudice on either side. *See* [Doc. 33-9] (citing *State ex rel. Crafton v. Burnside*, 207 W.Va 74, 78, 528 S.E.2d 768, 772 (2000)). Following this ruling, on September 18, 2018, CFI removed based on federal question and supplemental jurisdiction. [Doc. 1].

On August 7, 2020, CFI filed a Motion to Enforce Binding Jurisdictional Stipulations. [Doc. 33]. CFI asserts the stipulation is of the formal, truly binding, pre-removal type entitled to enforcement. [Doc. 34 at 9]. CFI further contends that a stipulation filed contemporaneously with a complaint is, at most, an appendage and thus not eviscerated by an amended pleading. [*Id.*]. Finally, CFI contends the ostensibly errant Circuit Court decision is now susceptible to reconsideration. [*Id.* at 11-12].

The Webbs responded on August 21, 2020. [Doc 35]. They assert that reconsideration would run afoul of the *Rooker-Feldman* doctrine. [*Id.* at 1]. They further contend the Amended Complaint supersedes the original Complaint, rendering the stipulation null and void. [*Id.* at 6-7]. Finally, the Webbs claim that CFI's motion to enforce is an untimely dispositive motion. [*Id.* at 7].

CFI replied on August 27, 2020, noting first the inapplicability of the *Rooker-Feldman* doctrine. [Doc. 36 at 4]. It notes 14 U.S.C. § 1450 actually vests the Undersigned with plenary authority for reconsideration. [*Id.* at 5]. CFI insists the decision should be vacated as a manifest injustice. [*Id.* at 6-7 n.1].

## II.

### A.     Governing Law

Regarding whether the instant motion is of the dispositive type, such motions request "a trial-court order to decide a claim or case in favor of the movant without further proceedings." *Dispositive motion*, *Black's Law Dictionary* (11th ed. 2019). A successful dispositive motion will "result[] in a judgment on the case as a whole." *Id*.

Regarding the *Rooker-Feldman* doctrine, the axiom applies to cases "brought by state-court losers complaining of injuries caused by state court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). Federal district courts cannot conduct appellate review of state court decisions, inasmuch as their jurisdiction is "strictly original." *Id.* (quoting *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923)). The doctrine is narrowly cabined. As our Court of Appeals has noted, it "applies only when the loser in state court files suit in federal district court seeking redress for an injury allegedly caused by the state court's decision itself." *Davani v. Virginia Dept. of Transp.*, 434 F.3d 712, 713 (4th Cir. 2006). The *Rooker-Feldman* doctrine does not apply to cases which have been removed to federal court. *See Aiken v. Waffle House, Inc.*, 509 F. Supp. 2d 541, 544 n.2 (D.S.C. 2007) (citing *Brown & Root, Inc. v. Breckenridge,* 211 F.3d 194, 198–99 (4th Cir. 2000) ("Cases invoking the [*Rooker-Feldman*] doctrine involve *separate* federal court actions, filed in the original jurisdiction of the court, rather than removal of state court actions over which the federal court has, at the time of removal, original jurisdiction.").

Regarding the effect of pre-removal rulings, "injunctions, orders, and other proceedings . . . shall remain in full force and effect until dissolved or modified by the district court." 18 U.S.C. § 1450. A substantial corollary, however, is the district court's power to reconsider pre-removal interlocutory rulings. *See, e.g.*, *Atkins v. AT&T Mobility Servs., LLC*, No. 2:18-cv-00599, 2020 WL 2842054 (quoting *Gen. Inv. Co. v. Lake Shore & M.S. Ry. Co.*, 260 U.S. 261, 267 (noting "[h]ad the cause remained in the state court, the power to reconsider would have been in that court, but when the removal was made the power passed with the cause to the District Court.")).

Binding precedent guides the extent to which courts may review motions to reconsider. *Carlson v. Boston Sci. Corp.*, 856 F.3d 320 (4th Cir. 2017). Although ultimately a discretionary exercise, the law-of-the-case doctrine provides that "when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *United States v. Aramony*, 166 F.3d 655, 611 (4th Cir. 1999) (quoting *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 816 (1988)). One exception to the law-of-the-case exists when the "prior decision was clearly erroneous and would work manifest injustice." *Am. Canoe Ass'n v. Murphy Farms*, 326 F.3d 505, 515 (4th Cir. 2003) (quoting *Sejman v. Warner-Lambert Co. Inc.*, 845 F.2d 66, 69 (4th Cir. 1988)) (internal quotation marks omitted). Ultimately, despite concerns of finality and judicial economy, the prime responsibility of federal courts is to "reach the correct judgment under law." *Id.* (noting law-of-the-case "does not and cannot limit the power of a court to reconsider an earlier ruling").

Regarding binding stipulations designed to block federal jurisdiction, an effective stipulation must be a "formal, truly binding, pre-removal stipulation signed by counsel and his client explicitly limiting recovery." *McCoy v. Erie Ins. Co.*, 147 F. Supp. 2d 481, 485 (S.D. W. Va. 2001). The formality requirement is met when the stipulation has been signed and notarized. *See Rabel v. Huntington Nat. Bank*, No. 2:14-cv-25818, 2015 WL 3540660, at *6 (S.D. W. Va. 2015) (quoting *Shumate v. DynCorp Int'l LLC*, No. 5:11-cv-00980, 2012 WL 830241, at *3 (S.D. W. Va. 2012)). The stipulation should be filed alongside the complaint, and the complaint should contain a sum-certain prayer for relief. *Id.* at 485–486 (quoting *De Aguilar v. Boeing Company*, 47 F.3d 1404, 1412 (5th Cir. 1995) ("[l]itigants who want to prevent removal must file a binding stipulation or affidavit with their complaints; once a defendant has removed the case," later filings are irrelevant)).

## III.

### A.    Motion Characterization and *Rooker-Feldman* Doctrine

The arguments respecting the (1) nature of the instant motion, and (2) application

of the *Rooker-Feldman* doctrine are each subject to summary adjudication. First, if the Court grants

CFI's motion, the Webbs and Counsel would simply be held to the stipulations they voluntarily

executed. The case would otherwise proceed unchanged. The motion is thus non-dispositive.

Second, the *Rooker-Feldman* doctrine does not apply to properly removed cases. *Brown & Root,*

*In. v. Breckenridge*, 211 F.3d 194, 198–99 (4th Cir. 2000); 18 U.S.C. § 1450.

### B.    Authority for Reconsideration

Binding precedent reiterates the ultimate responsibility of "reach[ing] the correct

judgment under law." *Atkins v. AT&T Mobility Servs., LLC*, No. 2:18-cv-00599, 2020 WL

2842054, at 5* (S.D. W. Va. 2020) (citing *Am. Canoe Ass'n v. Murphy Farms*, 326 F.3d 505, 515

(4th Cir. 2003)). In service of this principle, the Undersigned is obligated to part ways with his

good colleague on the state bench. For example, the stipulation was not an agreement between

both parties. [Doc. 33-9 at 2]. It was a voluntary and binding covenant by the Webbs and their

Counsel alone to thwart removal jurisdiction. While the Circuit Court said that "Defendants have

demonstrated no prejudice," quite the opposite is true. The ruling forced them to defend the case

in a state forum when they might have availed themselves of the federal forum furnished by

Congress. As one of my esteemed mentors once adroitly observed, a "defendant's right to remove

is at least as important as plaintiff's right to forum choice." *See McCoy v. Erie Ins. Co.*, 147 F.

Supp. 2d 481, 488 (S.D. W. Va. 2001) (Haden, C.J.) (quoting *McKinney v. Board of Trustees of*

*Mayland Community College*, 955 F.2d 924, 927 (4th Cir 1992) (the "removal procedure is intended to be fair to both plaintiffs and defendants alike") (internal quotations omitted)).

A showing of prejudice, although unnecessary here, is present in abundance. The binding stipulation suited the Webbs' purposes for 15 months in state court, forcing CFI to defend there. [Doc. 1 at 1–3]. When the Webbs and their Counsel discovered the new and potentially lucrative TCPA claim, however, they promptly moved to amend and attempted to jettison their promise.

Judge Haden observed that many state court systems "have interpreted their civil rules amendments in a way that encourages an adroit plaintiff to deny a diverse defendant access to the federal forum and yet, later, expose that defendant to a damage award that would have supported exercise of federal jurisdiction." *McCoy*, 147 F. Supp. 2d at 484–85. He wisely cautioned that one way a plaintiff can game the civil rules to prevent removal is by "amending[ing] his prayer for relief," exactly what the Webbs have done here. *McCoy*, 147 F. Supp. 2d at 485 (calling the manipulation of jurisdiction through strategically amending complaints "potential for abuse").

C.      **Binding Stipulations**

The Webbs' signed and notarized stipulation, submitted contemporaneously with their complaint, clearly satisfies two of the preconditions to achieve binding status. Additionally, the language chosen is clear and unambiguous, stating "the Plaintiff shall neither seek nor accept an amount greater than $75,000.00 in this case, including any award of attorney's fees, but excluding interest and costs." [Doc. 33-1 at 10–11]. While the Amended Complaint necessarily came after the stipulation, the later pleading relates back to its predecessor. W. Va. R. Civ. P.

15(c)(2); Fed. R. Civ. P. 15(c)(1)(B). Finally, the Webbs' original complaint contained a sum-certain prayer for relief when it incorporated the same $75,000.00 limit exclusive of interest and costs contained in the stipulation.

That the Amended Complaint lacked the same sum-certain prayer for relief as the original complaint does not license the Webbs and their Counsel to abandon their binding promise. Were that the case, a clever plaintiff might, on a whim, skirt the very real effect of her jurisdiction-altering--and binding--pact.[1]

Inasmuch as the Webbs filed a binding stipulation contemporaneously with the original Complaint, and the Amended Complaint relates back to the date of filing, the Court reconsiders the motion and **FINDS** that the Webbs are bound to their formal, truly binding, pre-removal stipulation. This finding accords with similar cases in this District. *See, e.g.*, *Rabel v. Huntington Nat'l Bank*, No. 2:14-cv-25818, 2015 WL 3540660, at * n.5 (S.D. W. Va. 2015) (finding that stipulation is legally binding and denying the Motion to Withdraw Stipulation).

---

[1] The Webbs also claim that the Amended Complaint renders the stipulation null and void. While "an amended pleading ordinarily supersedes the original and renders it of no legal effect," *see Young v. City of Mount Rainier*, 238 F.3d 567, 572 (4th Cir. 2001), a stipulation is not a pleading. Pleadings are enumerated in *West Virginia Rule of Civil Procedure* 7(a), and "[o]ther record materials, such as motions, depositions, interrogatories, and answers thereto, stipulations of counsel and other like or similar entries, are not pleadings." *Chapman v. Kane Transfer Co.*, 160 W. Va. 530 (1977) (emphasis added). Rule 7(a)--and its federal counterpart--lists what pleadings are allowed, and neither rule identifies a stipulation as part of a pleading. W. Va. R. Civ. P. 7(a); Fed. R. Civ. P. 7(a). Thus, while the Rules establish a permissive amendment standard, allowing the amendment of a binding stipulation would render such jurisdictional stipulations merely advisory, expanding the very "potential for abuse" the stipulations are meant to foreclose. *McCoy*, 147 F. Supp. 2d at 485.

**IV.**

Based upon the foregoing discussion, the Court **GRANTS** Defendant's Motion to Enforce Binding Jurisdictional Stipulations Limiting Damages Entered Into by Each Plaintiff and Plaintiffs' Counsel **[Doc. 33]**.

The Court directs the Clerk to transmit a copy of this written opinion and order to counsel of record and to any unrepresented party.

ENTER: November 25, 2020



Frank W. Volk
United States District Judge

9